THE CLEVELAND RAILWAY CO. ET AL. v. HELLER.

*Negligence—Charge to jury—Contributory negligence an issue, when—Failure of guest to direct driver of automobile—Defect in street—Parties defendant—Street railway and municipality.*

1. Where the question of contributory negligence is brought into the trial of a case, either by the pleadings supported by evidence, or by the evidence alone, it is the duty of the court to charge upon such question and submit it to the jury.

2. A passenger in an automobile has a right to assume that the driver knows how to operate the car, and that he is driving it in a proper manner, and where the car is in good running condition and operated by a competent driver the failure of the passenger to remonstrate or talk to the driver as to the manner of operating the car does not constitute contributory negligence.

3. A person who is injured upon a street railway track by reason of a defect in the street, caused by the negligence of the railway company in allowing it to remain in such unsafe condition, in violation of its contract with the city to keep that part of the street in constant repair, may maintain an action against such railway company for the injuries thus sustained.

4. In such an action the street railway company and the city may be joined as codefendants.

(Decided November 12, 1921.)

ERROR: Court of Appeals for Cuyahoga county.

*Messrs. Squire, Sanders & Dempsey* and *Mr. Wm. B. Woods,* for plaintiffs in error.

*Mr. John Cline,* for defendant in error.

VICKERY, P. J. This cause comes into this court on a petition in error to the common pleas court of Cuyahoga county, the purpose of which proceeding

is to reverse a judgment obtained by the plaintiff below, Ivy Heller, against The Cleveland Railway Company and the city of Cleveland, in the sum of $20,000, for alleged personal injuries.

It seems that on the date on which the accident occurred Miss Heller and five young ladies were visiting on West 58th street in the city of Cleveland, north of Detroit avenue. At about midnight the six young ladies started out with an automobile, the sister of the owner of the car at the wheel, three of the young ladies being in the front seat, one the driver at the wheel, and at her right a young lady with another young lady sitting on her lap. The automobile had been standing for some time and the carburetor did not work properly as they started, and evidence in the record shows that the machine sputtered some and ran a little irregularly. They proceeded south on 58th street and then turned east on Detroit avenue, with the left wheels of the automobile in the devil-strip and the right wheels between the rails of the east-bound track. Coming toward them on the west-bound track was a street car owned, controlled and operated by the railway company. As they got to about 54th street, the evidence shows that the driver of the automobile turned to the right so as to avoid striking, or being struck by the oncoming street car, when the automobile ran into a hole over near the south rail of the east-bound car tracks, and this jar threw them toward the street car, and the automobile and the street car came into collision, which resulted in a wreck of the automobile and the injuries complained of to plaintiff in this action, to say nothing of other injuries, which, I believe, are claimed, to the other occupants of the car.

On trial of this case before the common pleas court, a verdict, as above stated, was rendered in favor of the plaintiff, for $20,000.

In their efforts to reverse this judgment several errors are urged by plaintiffs in error, but the only one that was argued before this court, so far as the city is concerned, was that the court erred in its charge to the jury with respect to the doctrine of contributory negligence. The court, as a matter of law, told the jury that there was no contributory negligence of the plaintiff in this case, and this is urged as error, as being a question for the jury to determine.

We have announced ourselves so often on the question of the doctrine of contributory negligence that it is useless to repeat or even to quote our own decisions upon that proposition. Suffice it to say that we have repeatedly held—and I think this to be the law in Ohio, at the present time—that if there is contributory negligence brought into the case by the pleadings, supported by evidence, or by the evidence, where it is not pleaded, it is the duty of the court to charge upon contributory negligence and to submit that question to the jury, and that when he charges upon it he must correctly charge; and we still adhere to that doctrine.

But was there any contributory negligence shown in this record against this young lady, which in any way contributed to this injury? It must be remembered that she was a passenger in the automobile and she was not sitting in the front seat. She was sitting in the back seat, and I believe the curtains were down, as it was in the month of March. There was nothing wrong with the driver. There was apparently nothing wrong with the machine, any more

than with most machines when they stand for a bit. The only argument made was that inasmuch as she saw the driver driving in the devil-strip, astride the north rail of the east-bound track, that fact should have called forth a remonstrance from her; but the evidence in the case shows that that was not the cause of the accident. The evidence shows that the driver undertook to turn to the right so as to give the street car a wider margin, when the wheels were precipitated into a hole and the automobile was thrown up against the street car, and so the driving in the devil-strip was not at all the cause of the accident, as we get the evidence. But even if it were, what must a passenger in an automobile do? Must he keep remonstrating with the driver, telling the driver to do this or do that? It seems to us that it might be safely assumed by the passenger that the driver knew how to handle the car, and was driving it in a proper manner, and would be able to take care of it, and the passenger is not called upon to remonstrate or to talk to the driver constantly, and we do not think there was a particle of evidence in this case to show that the plaintiff was in any wise negligent in getting into this car or acting just as she did act; so that eliminates from the discussion the only error that was argued before us or complained about on the part of the city.

It is nowhere claimed that this verdict is excessive, or at least it was not argued to the court, and the above is the only error that the city of Cleveland urged here why this verdict should be reversed.

We come now to the attitude of the railway company. It has a more serious matter to complain of, and one which has caused the court no little concern.

It will be noted that the railway company and the city are sued jointly, and the proximate cause of the accident was a defect in the street, within that part of the street over which the railway company, by virtue of a contract with the city, has assumed control, and which it has promised to pave and keep in repair. That part of the Taylor Grant which refers to this is as follows:

"The company [meaning the railway company] shall maintain in constant repair the pavement within a space of seven feet in width for a single track and for a double track the entire space between the outer rails of both tracks, including the space between the two tracks, and one foot outside of each outer rail, but in no event to exceed eighteen feet."

On Detroit avenue there is a double track, and, therefore, by virtue of this provision in the Taylor Grant, which was accepted by the railway company and became a contract between it and the city of Cleveland, the railway company obligated itself to keep in repair that portion of the track where this accident occurred, which was between the rails of the east-bound track. Now the question arises whether by virtue of this contract of the city of Cleveland, the railway company can be held responsible in damages because of any defect arising by want of repair within the space which the railway company had agreed to keep in repair. Of course it is conceded that the city of Cleveland cannot divest itself of its liability to the public. It is made a statutory duty of the city of Cleveland by the statutes of Ohio to keep the streets open and in repair, and free from nuisance, and whether the railway company was responsible or not the city of Cleveland would surely be if the hole in the street was the

proximate cause of the injury and the other necessary elements were present to render the city liable.

It is argued, and with much force, that the contract is one between the city of Cleveland and the street railway company, made *only* for the benefit of the city of Cleveland, and to hold it harmless in case of accidents; that if the city was held responsible it might perhaps sue over against the railway company and recover whatever it was compelled to pay, but that the party injured had no right to maintain an action against the railway company; that the contract was made for the benefit of the city of Cleveland only, and the city, if the railway company failed to repair, could enter on the space and repair it and charge it to the railway company.

That brings us to the discussion of the question whether or not a contract made for the benefit of a third person can be enforced by that third person, and if a contract liability can, does it necessarily follow that a tort liability, as well, growing out of a contract, could be enforced by a party injured?

The law upon the question as to the limit of contractual liability is stated by one of the text-books as follows:

"As a rule, a contract cannot confer rights on a person who is not a party to it."

Then follow three exceptions to the general rule laid down by this authority, the third of which I wish to discuss:

"In many of the states, an exception is made in case of a promise made for the benefit of a third person, and the latter is allowed to sue thereon."

The English doctrine is followed generally by Massachusetts, and is that when a contract is made for the benefit of a third person, he cannot maintain

an action upon it unless he is a party to the contract. In the courts of New York, and several other states, of which Ohio is now recognized as one, the doctrine is the other way.

I have stated that Ohio now recognizes the doctrine of the right to sue. It has been a somewhat unsettled doctrine in Ohio. As far back as 42 Ohio St., in *Emmitt* v. *Brophy,* at page 82, the court held that a party for whose benefit a contract was made might maintain a suit upon it. The same doctrine was earlier announced in *Thompson, Admx.,* v. *Thompson,* 4 Ohio St., 333, and followed in the case of *William Bagaley & Co.* v. *Waters,* 7 Ohio St., 359. These, however, were where a mortgage had been assumed.

In *Cincinnati, Hamilton & Dayton Rd. Co.* v. *Metropolitan Nat. Bank,* 54 Ohio St., 60, Judge Spear followed the doctrine laid down in *Emmitt* v. *Brophy,* *supra.* In *American Surety Co.* v. *Raeder, Assignee,* 15 C. C., 47, the same doctrine was established, and this case was affirmed without opinion in 61 Ohio St., 661.

So it had been pretty well considered in Ohio that a party for whose benefit a contract was made might maintain a suit on it in his own name until in the case of *Cleveland Metal Roofing & Ceiling Co.* v. *Gaspard,* 89 Ohio St., 185, all these former holdings of the courts were practically overruled. In any event, the doctrine was laid down in that case that one for whose benefit a contract was made could not maintain a suit on that contract unless he had knowledge of the contract and had entered into his negotiations with that knowledge, unless it was one of the moving causes why he entered into that contract, which, as I say, practically overruled all of the earlier decisions. In *Royal Indemnity Co.* v. *Northern*

*Ohio Granite & Stone Co.,* 100 Ohio St.; 373, the supreme court laid down the rule as follows, quoting from the second proposition of the syllabus:

"A surety of the character described, which, by its contract, assures the faithful performance thereof by a principal who agrees to furnish labor and materials on a structure, at his own risk, cost and expense, is liable to a materialman who furnishes material, in default of the principal's payment therefor."

This expressly overrules the decision in the *Gaspard case, supra,* and the court states in the syllabus that it overrules that case.

So that brings us to the conclusion that the doctrine as now established in Ohio is that a party for whose benefit a contract is made may maintain a suit on that contract, whether he was a party to it or not, or whether he knew of the contract for his benefit when he entered into the contract relations and performed the services for which he might hold the party who so contracted personally responsible to him.

With that as a start, the right to maintain an action on a contract made for one's benefit, we come to the consideration of the question whether any person who was injured upon the street railway by reason of the defect in the street caused by the negligence of the railway company in permitting it to remain in that condition, in violation of its contract with the city of Cleveland, could maintain such suit, —the question, I say, whether such injured party could maintain such a suit.

There is a dearth of authority in Ohio upon this proposition. The only authority for the doctrine is that which the writer of this opinion, while on the common pleas bench, announced, that such a suit

could not be maintained, and no other Ohio authority has been shown us upon this proposition. In some other cases, where the railroad company has been the active creator of the nuisance in the street, it has been held liable, to-wit, in *McDonald* v. *Toledo Consol. St. Ry. Co.,* 74 Fed. Rep., 104, and also by a decision of the court in the Sixth Appellate District of this state, where an accumulation of snow and ice was directly caused by the Akron Street Railroad Company. So we are left mainly to the decisions of other states as to what the law should be upon this question.

In *Fielders* v. *North Jersey Street Ry. Co.,* 68 N. J. L. (39 Vroom), 343, the doctrine is laid down that a contract made between the city and a railway company, whereby the railway company has agreed to keep the pavement in repair, could not be used as a basis for a suit by a person who was injured on the part of the street required by the ordinance to be kept in repair; nor could she maintain an action in her own name. This is a well-considered case, and many authorities in England and America are cited to support the doctrine, and among the cases cited was the case of *Fielders* v. *North Jersey St. Ry. Co.,* reported in 67 N. J. L. (38 Vroom), 76, the doctrine of which case was disapproved. Ten judges comprised the court that rendered the decision. Judge Fort wrote a dissenting opinion, in which he said he would be willing to affirm upon the opinion of Mr. Justice Collins, in the supreme court case, reported in 38 Vroom, 76, *supra,* which sustained the doctrine that a party who was injured under such circumstances might maintain such a suit against the railway company, and three other judges of the supreme court of New Jersey agreed with him and dissented

from the majority opinion of the court, so, upon an analysis, this leading case had four judges out of ten dissenting.

This is the strongest case that has been cited by the railway company in its argument and in its brief.

Turn now to other states. In 201 Mass., 286, and it is to be noted that Massachusetts is one of the states which has adhered most closely to the English doctrine, in the case of *Phinney* v. *Boston Elevated Ry. Co.*, decided February 26, 1909, the court held:

"If a corporation operating a street railway agrees with a city that it will guard an open trench dug in a public street by the water department of the city, which crosses the track of the railway, in order that the water department may not place at the sides of the trench wooden barriers which it will be necessary to remove and replace as each car goes by, the corporation by this agreement assumes the duty of protecting travellers from the danger of the open trench, and is liable to a traveller who in the exercise of due care is injured by falling into the trench by reason of the negligence of a servant of the corporation who was sent to guard the trench and failed to do so."

Here the doctrine is established that by virtue of the contract between the city and the railway company a party injured by the negligence of the railway company in failing to comply with the terms of the contract between the city and the railway company has a right of action.

In 47 N. Y., 475, we find a very illuminating case, *City of Brooklyn* v. *Brooklyn City Rd. Co.* The second proposition of the syllabus follows:

"Where one contracts with a municipal corporation to keep any portion of its streets in repair, in

consideration of a license to use them to his benefit in an especial manner, he in effect, contracts to perform that duty to the public, in the place and stead of the municipality, which, by the acceptance of its charter, was imposed upon it, *i. e.,* to keep its ways in repair, so that they may be safe for the passage of the public; and the contractor is liable for any damages which naturally and proximately fall upon the corporation in consequence of the duty not being performed. Where, therefore, in consequence of a defect in a street embraced in such a contract, injury results to one of the public, who recovers of the corporation his lawful damages, the latter can recover them over of the contractor. As between the parties to the contract, the corporation is not *in pari delictu.*''

This case is authority for the doctrine that the city and the railroad may make a contract of that character, and that if a person brings a suit against the city, the city may recover of the railway company whatever it has been compelled to pay; that the parties are not *in pari delictu,* and the doctrine that one joined as a tort-feasor cannot recover over against another would not obtain.

In the case of *Jenree* v. *Metropolitan Street Ry. Co.,* 86 Kans., 479, the first proposition of the syllabus is:

''A city ordinance granted to a street railway company the right to construct, maintain and operate its railway over a viaduct forming a part of a street in the city. One of the conditions was that the railway company should repair and maintain in good condition and safe for public travel, all parts of the viaduct. The ordinance was accepted, and the railway was constructed and operated. A sidewalk

forming a part of the structure, but not the part used by the railway company, was suffered to become out of repair and unsafe for use, in consequence of which the plaintiff, while traveling on the sidewalk, was injured. *Held,* the plaintiff may recover directly from the railway company the damages resulting from the injury.''

And the second syllabus reads:

''The ordinance further provides that the railway company shall respond to the city and save it harmless from damage resulting from acts and negligence of the railway company. *Held,* this provision of the ordinance merely secures to the city the right to be reimbursed in the event that its own liability, which under the law still exists, shall be enforced. It does not confine the railway company's liability to the city alone.''

It will be noticed from this case that under a contract, exactly similar to the one between the railway company and the city in the instant case, the injured party was permitted to recover against the railway company, and it will be noticed from the syllabus quoted that the city was primarily liable, of course, and could not shift its liability by reason of a contract with the railway company. In other words, it was held that this contract between the city and the railway company was a contract for the railway company to keep the street, or that portion of it, in repair, and it was made for the benefit of anybody who used the street, and anybody that was injured thereon should be entitled to recover.

In the case of *McMahon* v. *Second Avenue Rd. Co.,* 75 N. Y., 231, the court of appeals held, in the third proposition of the syllabus:

"Where one contracts with a municipality to perform in its stead the duty resting upon it of keeping its streets in repair and safe for the passage of the public, and where because of neglect to perform the duty a cause of action arises against the municipality, the action may be brought by the party injured directly against a contractor."

And the next proposition of the syllabus sets up the contract, which was of much the same effect as the contract between the city and the railway in the instant case. A person was injured by reason of the failure of the railway company to perform its contract, and a suit against it was sustained, which is authority directly in point.

The same doctrine was laid down in *Paducah Lumber Co.* v. *Paducah Water Supply Co.,* 89 Ky., 340, and we might go on citing authorities without limit in states outside of Ohio to sustain this doctrine, but we think these cases clearly establish the doctrine that a suit may be maintained against the railway company, and I think this disposes of the other argument of the railway company that there is a misjoinder of parties defendant. The city of Cleveland is liable by reason of the statutory duty imposed upon it to keep the streets open, in repair and free from nuisance, and the railway company is liable by virtue of a contract with the city of Cleveland, and we see no reason why there can't be an action brought against them both at the same time. One of the authorities above cited, to-wit, the 47th N. Y., holds that they will not be *in pari delictu,* and that one might recover from the other even though they were sued jointly and were joint tort-feasors.

Taking the whole record in this case into consideration we can come to no other conclusion than that

the plaintiff had the right to recover against both the city and the railway company. Of course it is argued with much force that this contract in the Taylor Grant was made for the benefit of the city. We think it is broader than that. The only purpose of keeping the streets in repair is for the benefit of those who travel the streets. The railway company could still run its cars if the street was not paved at all, as well as though it was paved, and consequently it could not have been for the benefit of the railway company that these streets were to be kept in repair. It must have been for the benefit of those who travel the street and use the highway, and one has the same right to use that portion of the highway which the railway company has accepted the duty of keeping in repair as any other part of the street, and consequently we have come to the conclusion that this contract was not only made for the benefit of the city to hold it harmless, but made for the benefit of every user of the street. Then coming back to the doctrine now well established in Ohio, that where a contract is made for the benefit of a third person that third person may avail himself of its benefit, we can see no error in the joining of these two parties, and can see no reversible error in holding that the judgment may be sustained against both defendants.

*Judgment affirmed.*

INGERSOLL and SULLIVAN, JJ., concur.