# H. BLUM & CO. *v.* LANDAU.

*Labor unions—Agreement between manufacturers' association
and unions—Contract for benefit of third persons en-
forceable—Acquiescence by voluntary unincorporated as-
sociation binding upon members—Contract enforceable
by employees, although not parties thereto—Ratification
by employer, reinstating discharged employee—Affirmative.
assent to amendment of contract unnecessary—Acquiesc-
ence and ratification by employer's statement of intention
to participate—Contract automatically renewable yearly,
but terminable upon written notice—Affirmative act neces-
sary to terminate—Statute of frauds—Revision of agree-
ment not within statute requiring memorandum in writ-
ing—Section 8621, General Code.*

1. Under contract governing relations between employers and
   employees in garment industry, automatically renewable
   at end of each year, subject to right of parties to termi-
   nate it by written notice, affirmative act was necessary
   to terminate contract.
2. Employer, reinstating discharged employee, after latter
   complained to board of referees established under trade
   agreement, *held* shown to have ratified agreement govern-
   ing relations with employee.
3. Mere acquiescence by voluntary unincorporated association
   is sufficient to make contract establishing trade relations
   with employees valid and to bind members of association
   thereto.
4. Member of voluntary unincorporated association under
   contract to establish trade relations with employees, which
   provided for amendment, need not affirmatively assent
   to amendments agreed upon, as provided by contract,
   to be bound thereby.
5. Evidence that employer stated he would get in under
   agreement establishing relations with employees, when
   he was ready, *held* to show acquiescence and ratification
   of agreement by employer.
6. Revision of agreement establishing trade relations between
   employers and employees, signed by agent of association
   of which defendant was member, *held* not invalid, under

Section 8621, General Code, requiring contracts to be in writing unless signed by person to be charged therewith or his agent.

7. Contract between Garment Manufacturers' Association and International Ladies' Garment Workers' Union, made for benefit of employees of manufacturers composing association, for purpose of preventing strikes, *held* valid and enforceable.

8. Contract between manufacturers' association and employees' union, for benefit of employees of members of association, may be enforced by employee, though employee's name did not appear in contract.

(Decided December 13, 1926.)

ERROR: Court of Appeals for Cuyahoga county.

*Messrs. Leighley, Halle, Haber & Berick,* for plaintiff in error.

*Messrs. Cline & Patterson,* for defendant in error.

SULLIVAN, J. This cause comes into this court on error from the municipal court of Cleveland, wherein the plaintiff below, Rose Landau, recovered a money judgment for wages due from defendant below, H. Blum & Co., under the terms of an agreement entered into in 1921 between the Cleveland Garment Manufacturers' Association and the International Ladies' Garment Workers' Union. Under the terms of this agreement, it became a continuing contract, automatically renewable at the end of each year, and under the record it was made not only for the benefit of the principals, but as well for the benefit of third parties, to wit, employees of the Cleveland Manufacturers' Association, of which the plaintiff below was one, through H. Blum & Co.

It appears that for the purpose of preventing strikes and lockouts in the garment trade throughout the country a plan was initiated in 1918, principally by Newton D. Baker, former Secretary of War, which movement finally crystallized into a working agreement between the manufacturers and unions, resulting in the contract between the association and the union, the terms of which are incorporated in the contract from which the issues arise in the case at bar, and, in order to decide the points of error submitted, it is necessary to refer to the pertinent clauses of the contract, which are as follows:

"In view of their primary responsibility to the consuming public, workers and owners are jointly and separately responsible for the cost and quality of the service rendered. It is agreed that co-operation and mutual helpfulness are the basis of right and progressive industrial relations, and that intimidation and coercion have no proper place in American industry.

"To provide a means whereby the parties may co-operate, both to preserve peace in the industry and to further their mutual interests in the common enterprise, this agreement is entered into between the Cleveland Garment Manufacturers' Association, on behalf of those of its members whose signatures are attached hereto, the International Ladies' Garment Workers' Union, and Locals No. 26, Cloak and Suit Tailors, No. 27, Skirt and Dress Makers, No. 29, Women Garment Workers, No. 37, Ladies' Garment Pressers, No. 42, Ladies' Garment Cutters, No. 94, Sample Makers, and the Hon. Julian W. Mack, Samuel J. Rosensohn, and John R. McLane, or their successors, acting as a board of referees.

"Article VI, Paragraph 2: Reaffirming and continuing the plan provided by the board of referees in their decision of April 22, 1921, and agreed to by the association and the union, each worker shall be guaranteed beginning January 1, 1922, not less than forty-one weeks of employment in each year or pay at two-thirds his minimum so long as the fund. in his shop as hereinafter limited shall enable this to be done. Each manufacturer shall lay aside each week 7½ per cent. of his direct labor pay roll to constitute an assurance of employment fund. Any worker in any shop who has been idle eleven weeks during the calendar year shall thereafter be entitled to draw upon such fund for any day of unemployment at the rate of two-thirds of his minimum wage.

"Article XIII: This agreement shall remain in force until December 31, 1922, and shall be automatically renewed for another year, and so on for each succeeding year, subject only to the right of either party to terminate it on December 31, 1922, or on December 31st of any succeeding year, by giving written notice at least three months before the end of such year. Either party may, upon similar notice, at such periods, suggest amendments or a reconsideration of the terms of the agreement, as a whole, in which case the referee shall call the parties into conference during the three-months' period, and whatever changes may be agreed on shall become effective at the beginning of the next yearly period."

The association appointed as agent and manager one Fred C. Butler, and the rules and regulations of that body conferred upon the executive com-

mittee authority to act for the association, and make final adjustment of all matters. One of the rules governing the executive committee is as follows:

"The executive committee shall have general management of the affairs and property of the association. It may adopt such rules and regulations as will best promote both the interest of the association and the objects for which it is formed. The executive committee shall meet at least once a month, or oftener, at the call of the president. All questions that may arise, pertaining to the welfare and prosperity of the members of the association and the industry, may be referred to the executive committee for their investigation and final judgment."

The errors assigned for a reversal of the judgment below are: First. That there was no evidence whatever to support the finding. Second. That the renewal of the agreement was within the statute of frauds; that it was not in writing; and that, therefore, it was not binding upon H. Blum & Co.

There is no issue as to the agreements of 1921, 1922, and 1923, but it is claimed that, as to the agreement of 1924, known as "plaintiff's Exhibit 2," Blum & Co. did not assent thereto, and that consequently the company is not bound by the terms of what is known as the revision of the terms of the contract of January, 1924.

It is claimed that the terms of the agreement of 1924 were revised, in that the promised employment was decreased from 41 to 40 weeks per annum; that the rate of unemployment compensation was decreased from two-thirds to one-half of

the minimum wage; and that the percentage of the weekly pay roll, required to be set aside for the unemployment fund, was raised from 7½ per cent. to 10 per cent. It will be noticed in Article XIII that the renewal year by year was automatic, subject only to the right of either party to terminate it on December 31 of any year, by giving written notice at least three months before the end of such year:

"Either party may, upon similar notice, at such periods, suggest amendments or a reconsideration of the terms of the Agreement as a whole, in which case the referee shall call the parties into conference during the three-months' period, and whatever changes may be agreed on shall become effective at the beginning of the next yearly period."

It is important to keep these requirements in mind, for it is clear that, to terminate the agreement and prevent its automatic existence and continuance, affirmative action is required of that member of the association withdrawing; otherwise, acquiescence is presumed.

Blum & Co. was a member of the association, and there is no evidence in the record of any compliance on its part with respect to this written notice, required by Article XIII, or of any other notice of any character whatsoever, given prior to October 1, which would be the date intended by the three-months' stipulation.

It appears by the record that Butler, above mentioned, who was the agent and manager of the association, and consequently, under the rules, was the duly accredited representative of Blum & Co., which was a member of that body, on Sep-

tember 27, 1923, held a conversation with defendant below, and there is credible evidence that there was at that time no affirmative gesture of any kind by which the company withdrew from the automatic continuance of the contract for 1924. It will be observed that this date was prior to October 1st, and it must be conceded that the company was aware of the provisions of Article XIII, which required written notice of withdrawal at least three months before the end of each year. To terminate a contract requires some affirmative act, and that act, under the present record, must be substantially in conformity with the rules agreed upon by the contracting parties.

In this conversation between the agent of the association and Blum, it appears that the revisions incorporated in the contract of 1924 were discussed, but that the final answer of the defendant below was that there should be no break in the agreement, whereupon the agent reported this conference and attitude on the part of defendant below to the executive board, at a meeting which was convened for that purpose, wherein it was agreed:

"That the association will agree to continue the agreement for another year, but with the express understanding that the board of referees shall meet and hear arguments for the elimination or modification of certain provisions, and that the board shall have full power to eliminate and amend such provisions."

To those terms and provisions for the 1924 contract the unions agreed, and not until December 26th, five days before the expiration of the contract of 1923, after a lapse of the three-months'

period with the exception of five days, did the company attempt to dissent from the contract of 1924.

The manufacturers and the unions, having thus agreed, met on November 19, 1923, for the purpose of discussing the amendments, concerning which there was the conference heretofore mentioned between Butler and Blum & Co., and it is significant that the company, by its representative Blum, was present at the meeting of the referees, and there is nothing in the record to show that even at that time, with full knowledge of the action of that day and his previous conference thereon with the agent, did he attempt to terminate the contract in any wise. Upon receiving the dissent of December 6, 1923, the agent communicated to Blum that the association had committed itself under the rules for the year 1924 and that it was bound to see it through.

After January, 1924, a complaint was filed by some of the employees of Blum because they had been discharged, and, as the referees were about to take jurisdiction of the matter, after the filing of the complaint, Blum reinstated the employees and the complaint was dropped. This act, together with those that occurred prior thereto, make it clear that Blum had not only not terminated the agreement ending December 31, 1923, but had ratified the act of the association and the unions by acquiescence, at least, if not by overt act, and under all cases involving a voluntary unincorporated association mere acquiescence is sufficient to make the contract valid and to bind the members of the association thereto. This record, by virtue of all of the acts and conferences of

Blum, teems with facts showing acquiescence, and under *Devoss* v. *Gray,* 22 Ohio St., 159, cited by able counsel for defendant in error, the court holds acquiescence to be sufficient. The second paragraph of the syllabus of that case reads:

"In order to hold a member of such society responsible for its debts, it must be shown that such member, in some way, sanctioned or acquiesced in their creation."

Judge McIlvaine, who wrote the opinion, uses language on page 169 that supports this proposition:

"If we were to assume that the defendants were members, because it is alleged that they were the deacons of the church, still their liability as principals would not follow, because a member of an unincorporated religious society cannot be held personally responsible for the debts of the society, unless it be shown that he, in some way, sanctioned or acquiesced in their creation. Nor is the allegation that defendant Douglass afterward, as treasurer of said church, paid to plaintiffs certain sums of money on account of said work sufficient to show a ratification of said contract on his part."

The case of plaintiff in error is argued on the theory that some affirmative act was necessary in order to bind Blum to the agreement of 1924. Counsel cite Article XIII of the agreement, but the record shows that the provisions of Article XIII were ignored, so that it is conceded that, if Blum terminated the contract, it was not according to the provisions of Article XIII. But it is asserted that because there was no affirmative assent to the revisions of 1924, the company is not bound by its provisions. This position does violence

to the principle of acquiescence, laid down in the text-books and in the authorities, with respect to binding the members of a voluntary unincorporated association, in the absence in the record of any direct act on the part of Blum. His conduct is consistent with acquiescence, and, in our judgment, this attitude under the record binds him to the agreement of 1924.

We further cite, upon this question of acquiescence, the following authorities:

*Males* v. *Murray,* 3 C. C., (N. S.), 671, 13 C. D., 396 (affirming 7 N. P., 614, 10 O. D., (N. P.), 373), holds that members of voluntary unincorporated church society were only liable for such of its debts as they had sanctioned or acquiesced in.

*Bushong* v. *Taylor,* 82 Mo., 660, holds all members who sanctioned the acts of trustees of an unincorporated church society, in signing notes in their individual capacity for the purpose of secuing funds for the church, liable thereon.

*Le Saint* v. *Fisler,* 6 W. L. B., 337, 8 Dec. Rep., 216, holds trustees of unincorporated religious body not personally liable for loan to such body, where they did not participate or ratify such loan and where the person negotiating it was not their agent.

Supplementing the attitude with respect to non-termination of the contract, but ratification and acquiescence therein, we note by the record that one Miss Stinson was the agent of the impartial referees, and that it was her duty to collect the funds for the unemployment fund, and perform other duties in relation thereto, and that, acting under said authority of January, 1924, upon demand made by her on Blum, he used the following

language: "Have a little patience. I will get in when I am ready."

This is not the attitude of one terminating or withdrawing from a contract, but it establishes a status of acquiescence and ratification, and it is important to observe that this was Blum's state of mind in January, 1924, subsequent to the commencement of the operation of the terms of the contract for that year.

As to the second assignment of error, the one under Section 8621, General Code, known as the statute of frauds, inasmuch as the record fixes Butler as the agent of the association and clearly shows that his agency was never revoked, and that Blum recognized him as such agent, it appears clear that these facts make such assignment immaterial, because Section 8621 contains the exception:

"Unless the agreement upon which such action is brought, or some memorandum or note thereof, is in writing, and signed by the party to be charged therewith, or some other person thereunto by him or her lawfully authorized."

The revisions of 1924 were incidental to the main body of the terms provided in the contract for the years 1921, 1922, and 1923, and when Section XIII, relating to the three-months' notice, was ignored by Blum, there was left the main body of the contract, to wit, a memorandum in writing, but when there is added to this memorandum in writing the revisions of 1924 by the agent of the association, and therefore the agent of Blum, it cannot be said that the agreement of 1924 is contrary to the provisions of Section 8621 of the General Code.

That such a contract as the one at bar is en-

forceable there can be no question. It clearly appears that the contract between the Garment Manufacturers' Association and the International Ladies' Garment Workers' Union was a contract made for the benefit of third parties, and that one of its considerations was lodged in the purpose and intent to prevent strikes and lockouts deleterious to the contracting parties.

It may be said that the plaintiff below, Rose Landau, was not a party to the agreement and, therefore, that she could not claim under this principle. While formerly it was necessary to have the person for whose benefit the contract was made a party thereto, yet the great weight of later decisions is to the effect that, where the name of the third party does not appear to the contract, if the terms are made for the benefit of such person, the provisions of the contract are enforceable, if they are otherwise meritorious, in a legal sense.

It clearly appears in the record of this case that Rose Landau was an employee of the defendant below, and that the membership of Blum & Co. in the association which made the contract with the union was for the purpose of producing a contract which was for her benefit as well as the benefit of her coemployees. That such a contract is valid and enforceable is supported by unquestioned authority. Our own court, in *Cleveland Railway Co. v. Heller,* 15 Ohio App., 346, lays down this rule, and we think the doctrine applies in this case as to the force and validity of the contract at bar.

Holding these views, the judgment of the lower court is hereby affirmed.

*Judgment affirmed.*

LEVINE, P. J., and VICKERY, J., concur.