**MONTANA STATE FEDERATION OF LABOR et al. v. SCHOOL DISTRICT NO. I, HELENA, et al.**
No. 1497.

District Court, D. Montana.
May 15, 1934.

Wellington D. Rankin, of Helena, Mont., for plaintiffs.

Sherman W. Smith, E. G. Toomey, and E. M. Hall, all of Helena, Mont., for defendants.

BOURQUIN, District Judge.

The plaintiff Federation is a voluntary association of labor unions, and plaintiff Graham is its president and described as a taxpayer. Defendants are the local school district and its trustees. The suit is to enjoin certain activities of defendants.

In brief but sufficient narrative, the allegations of the complaint are that defendants to secure the benefit of the National Industrial Recovery Act (48 Stat. 195) in behalf of a local school building, intend to sell district bonds to the United States and to secure from it a grant, dole or donation of public money; that for said building defendants have approved a wage scale less than just and reasonable and insufficient to provide a standard of living in decency and comfort, contrary to said Act; that defendants have called for bids upon the scale so approved, and intend to contract upon that basis; that be the contracts thus illegally made, union and non-union labor will be obliged to accept the scale or strike, to their damage and the delay of construction, in consequence of which the object of the Act to promote public and private welfare will be defeated; that the suit is in behalf of all workmen likely to be employed in the construction; and that to constrain defendants not to proceed unlawfully, so that the evils aforesaid be avoided, injunction is necessary.

In response to order to show cause, defendants present only a motion to dismiss, on grounds sufficiently hereinafter appearing.

The Act declares amongst other things that unemployment and disorganization is impairing standards of living, and that its object is to afford a remedy.

To that end it authorizes the President to loan and donate or give government or the people's money to construct public works; that so far as practicable no employee thereon shall work more than thirty hours per week, and "that all employees shall be paid just and reasonable wages which shall be compensation sufficient to provide, for the hours of labor as limited, a standard of living in decency and comfort" (section 206, 40 USCA § 406); that loans and donations shall be "upon such terms as the President shall prescribe," and no donation "shall be in excess of 30 per centum of the cost of the labor and materials" (section 203, 40 USCA § 403) devoted to the work; that the President may create agencies and prescribe regulations for administration of the Act; and that any violation of said regulations is to be penalized by fine or imprisonment or both.

Regulations so prescribed stipulate wages shall not be less than regional scales by the President declared, nor less than any local scale per hour prescribed "under collective agreements or understanding between organized labor and employers" in effect April 30, 1933; that any question of the local scale arising before contract made, shall be determined by the Department of Labor; that organized and/or unorganized labor may be employed; and that the Board of Labor Review shall hear "all labor issues arising under the operation of any contract financed" as aforesaid, "and its decisions shall be binding upon all parties."

The capacity and/or right to maintain the suit seems unquestioned, for that aside from more or less strategic grounds in various forms, defendants' motion to dismiss and main contention are that plaintiffs are bound to exhaust the remedy by the regulations provided, of appeal to the Board of Labor Review, before resorting to this court of equity. With that the court agrees, with qualification as later appears. The Act is a grant, gift or donation of benefits, and also is a law.

Like all grants it is more political and administrative than judicial, and though no one is obliged to accept its benefits, if they accept they are subject to all its terms. That is, who takes the benefits, takes the burdens, and accepting the grant they agree to satisfy its conditions, perform its covenants, abide by its procedure for administration.

This grant is to benefit labor as the principal thing, benefit to the school district, merely an incidental thing.

Its object is (1) to employ labor, and (2) at wages which will afford it a decent and comfortable standard of living, not one but both. To that end is the loan and donation to the school district. It is very clear that the latter is nothing but the agency or instrumentality employed to effectuate the Act and attain its objective aforesaid.

And the district accepting the benefit and commission, is bound to perform its covenant to employ labor and pay the wages by the Act stipulated.

The complaint alleges the district proposes to welsh on the job, betray its trust, evade its duty, monopolize the benefits, deprive labor of the better part of the benefits intended for it, defy and violate the Act and law, and defeat its object to promote private and public welfare.

Now by their motion to dismiss, defendants admit the truth of the charge, that this is their evil design.

There is right and duty to prevent its consummation.

To accomplish it, however, requires that plaintiffs in first instance appeal for hearing and relief to the Board of Labor Review. The Act provides that procedure, and plaintiffs seeking the benefits of the Act, are even as defendants subject to its burdens or terms.

For purposes of administration, state and nation, are multitudes of officers, boards and commissions; and it is settled law, many times declared by the Supreme Court, that if the statutes provide the error of any agency may be remedied by appeal to and hearing before board or commission, that remedy is exclusive and final, save that if the decision of the reviewing body be illegal, due to fraud or mistake, or without substantial evidence to support it, then and then only the loser may invoke the power of a court of equity to set it aside.

The obvious reason is that until the political or administrative function is concluded, the judicial function can not properly be invoked or interfere. Many illustrations appear in the matter of public lands, taxation, rate making, licenses and the like.

Wherein the regulations declare the decision of the Board of Labor Review (the President's alter ego) shall be binding, means no more than this.

For the Act does not empower the President to destroy labor's right or the employer's right to resort to the courts, and it will not be assumed he intends to attempt it.

It follows in this case that if defendants accept the government's money they are bound to pay the wages by the Act stipulated; and it likewise follows that if they do not, plaintiffs' members to be employed may coerce them to do so, but are equally bound to resort first to the Board of Labor Review, and second, if necessary, to the court.

There is qualification to this, however, as before indicated; and it is that pending litigation in or before some other tribunal which said Board is, a court of equity may and should almost of course issue any injunction or exact an equivalent reasonably necessary to preserve the status quo, to protect property or rights, and to ensure the fruits of the probable decision or judgment.

See cases, 32 C. Jur. 114, 124, et seq.

That is this case,—one more illustration that eternal vigilance is the price of wages as well as of liberty. Indeed, wages *are* liberty.

In so far as the Act dictates a minimum wage (it does not attempt to limit the maximum), in general government has no such power. But in grants of money to be expended for wages, government has that power, for that the option is the grantee's to accept on government's terms or not at all.

Accepting, he agrees to pay the price of the grant, and none his constitutional rights are infringed.

Taking the record before the court, it is highly probable that the decision of the Board (that is, of the President) will favor plaintiffs. Without injunction, defendants could and intend to proceed, expend the granted money, wrong the employees, and profit the district, before proceedings before the Board or President could be concluded. In consequence the employees by a favorable decision would gain but a barren victory.

Accordingly, injunction pendente lite is granted as prayed, provided plaintiffs institute due proceedings before the Board of Labor Review within ten days, and prosecute them to conclusion with reasonable diligence. And this without prejudice to the right to vacate this order, do answer and final hearing require.

Provided further, that if defendants will undertake to comply with any decision of said Board or President and any judgment of the court in any review thereof, and from the beginning of the work pay the wages thereby fixed, injunction will be denied. It must be borne in mind that in any review, the court's power is limited to affirm or annul and not to fix any wage.

It is observed that any evidence before the Board will doubtless be by it taken locally.