Serge Novosk and Fred Zachman, Appellants, v. Max Reznick, Trading as Central West Motor Stages, not Incorporated and Central West Motor Stages, Incorporated, Appellees.

Gen. No. 42,788.

Opinion filed June 30, 1944. Rehearing denied September 14, 1944.

°LIONEL G. THORSNESS, of Chicago, for appellants; CHARLES G. CULVER, of Chicago, of counsel.

WYATT JACOBS and WALTER A. CHRISTOPHER, of Chicago, for appellees.

Mr. JUSTICE LUPE delivered the opinion of the court.

Plaintiffs as operators of defendants' motor buses sued for the difference between what they received from the defendants and the amount which the defendants contracted in writing with the Works Progress Administration to pay operators, under contracts entered into between the defendants and the Works Progress Administration. The cause was tried before a jury. The court, at the close of plaintiffs' evidence, directed a verdict in favor of the defendants. This appeal followed.

Defendants were engaged in the business of operating motor buses in the city of Chicago. They entered into certain written contracts with the Works Progress Administration to carry workers to various projects located in Chicago during the years 1936 to 1939. Plaintiffs contend that the contracts sued upon were entered into by defendants with the Works Progress Administration for the benefit of plaintiffs and as third party beneficiaries they were entitled to receive from the defendants the difference between the amount actually received by them for services rendered from defendants (in operating motor buses) and the amount which defendants agreed to pay such operators under the contracts of defendants with Works Progress Administration.

Defendants contend that plaintiffs are not entitled to sue (under the contracts) as they are not third party beneficiaries; and that even if the plaintiffs are entitled to maintain their suit as third party beneficiaries, the plaintiff Serge Novosk could not recover because his claim is barred by section 16 (five year) of the limitation act; and further that plaintiffs failed in their proof to establish a prima facie case. The claim of plaintiff E. R. Nelson is not involved in this appeal, since he was dismissed by stipulation.

At the time of the trial the parties to this proceeding entered into a stipulation that plaintiff Serge Novosk worked for Max Reznick doing business as the Central West Motor Stages, not incorporated, for 294½ days from June 22, 1936 to July 10, 1937 as a bus driver engaged in carrying WPA workers to WPA projects, and that he received as compensation for said services the sum of $726.25; Fred Zachman worked for the defendant Central West Motor Stages, incorporated, for 228 days from May 1, 1938 to May 15, 1939 (in the same kind of work with the same duties as was Novosk), and that he received $694 as compensation for said services.

The contracts between defendants and the Works Progress Administration relied on by plaintiffs and marked plaintiffs' exhibits 2 to 12 inclusive (except plaintiffs' exhibit 4) were admitted in evidence, but later stricken by order of court. All of said exhibits (excepting exhibits numbered 9 and 10) contained a provision wherein defendants agreed to pay bus drivers "not less than the prevailing wage rate in the particular locality in which the work performed is located. Reference may be made to the Works Progress Administration for information concerning such prevailing wage rate." Exhibits 9 and 10 contain the provision last hereinabove mentioned and in addition thereto the following: "Such prevailing wage rate as established by the Works Progress Administration is $1 per hour."

It is insisted by plaintiffs that they are third party beneficiaries under the contracts between defendants and the United States Treasury, State Procurement Office (exhibits 2 to 12 inclusive) and argue that in the year 1929 a national economic crisis existed in the United States; that Congress had passed the Emergency Public Works and Construction Projects Act, and that section 401, chapter 8, title 40 USCA establishing such emergency act empowered the President of the United States to create a Federal Emergency Administration of Public Works, to effectuate the purpose of said act. By section 406 thereof, restrictions were imposed upon contracts entered into to carry out the administration of public works under the act. In section 406 we find the following language: "All contracts let for construction projects and all loans and grants pursuant to this title shall contain such provisions as are necessary to insure . . . (3) that all employees shall be paid just and reasonable wages which shall be compensation sufficient to provide for the hours of labor as limited, a standard of living in decency and comfort

. . . (5) that the maximum of human labor shall be used in lieu of machinery whenever practicable and consistent with sound economy and public advantage.''

The prime purpose of the passage of the act was to create employment for destitute citizens and to provide a wage that would secure a standard of living in decency and comfort and to relieve chaos and bring about stabilization of business.

The record in this case discloses that at the time money was paid under said contracts to the defendants by the Works Progress Administration the defendants certified that the provisions of said contracts had been complied with by them.

In the case of *Montana State Federation of Labor v. School Dist. No. 1, Helena,* 7 F. Supp. 82, at page 83, the court said:

''The grant is to benefit labor as the principal thing, benefit to the school district merely an incidental thing. Its object is (1) to employ labor, and (2) at wages which will afford it a decent and comfortable standard of living, not one but both.''

It is not necessary that a person to be benefited by a contract be named therein if he is otherwise sufficiently described or designated, or he may be even one of a class of persons if the class is sufficiently described or designated. 17 C. J. S. 519, subparagraph (d); *Hearn v. Ralph Sollitt & Sons Const. Co.* (Tex. Civ. App.), 93 S. W. (2d) 551.

In considering the purpose and intent of the Emergency Public Works and Construction Projects Act, the requirements to insure the amount of wages the employee was to receive while working for employers who had entered into contracts such as has been sued upon in this cause; the manner in which the wage scale was to be determined; the certificate which was necessary by the employer, certifying to the Works Progress Administration of his compliance with the

provisions of the contract, lead us to conclude that the contracts herein sued upon were for plaintiffs' benefit, and as third party beneficiaries they were entitled to maintain their suit.

Chapter 83 of the Illinois Revised Statutes, sec. 17 [Jones Ill. Stats. Ann. 107.276] (limitations) provides in substance that all actions on written instruments or other evidence of indebtedness in writing shall be commenced in 10 years next after the cause of action accrues. Section 16 of the limitation act limits the time in which actions must be commenced to five years, and has reference to unwritten contracts, awards, etc. Plaintiffs argue that in view of the fact that they are proper parties plaintiff and have a right to maintain their suit as third party beneficiaries under said contracts, the 10-year statute of limitations applies, whereas defendants contend that the 5-year statute is applicable for the reason that it was necessary for plaintiffs to introduce parol evidence to show the existence of a contractual relationship between the plaintiffs and the defendants.

Plaintiffs in support of their contention rely upon the case of *Marianna Lime Products Co. v. McKay,* 109 Fla. 275, 147 So. 264; *Carson, Pirie, Scott & Co. v. Parrett,* 346 Ill. 252; *Montana State Federation of Labor v. School Dist. No. 1, Helena,* 7 F. Supp. 82; and *Economy Fuse & Manufacturing Co. v. Raymond Concrete Pile Co.,* 111 F. (2d) 875.

All of the cases above cited with the exception of the *Economy Fuse & Manufacturing Co. v. Raymond Concrete Pile Co., supra,* deal with third party beneficiaries, and the statute of limitations was not involved. In *Economy Fuse & Manufacturing Co. v. Raymond Concrete Pile Co., supra,* the court, at page 878, says:

"It is not the law of Illinois that a cause of action upon a written contract is taken out of that class by reliance upon evidence of surrounding circumstances.

On the contrary in this jurisdiction it is recognized that in determining whether the written provision of a contract imports a warranty implied by law the court may and must admit such evidence of the surrounding circumstances as will aid the court in arriving at the true meaning of the parties. The proposition in no way violates the parol evidence rule and in nowise militates against characterization of the cause of action as one arising upon a written contract.'' (Citing cases.)

And then the court goes on to say, at page 879:

''The conclusions to which we find ourselves impelled are not in conflict with the authorities relied upon by defendant. In each of those citations, parol evidence was necessary to show existence of a contractual relationship between the parties. Such is not the case here. . . . Likewise, in *Railway Passenger & Freight Conductors' Mutual Aid & Benefit Ass'n v. Loomis,* 142 Ill. 560, 32 N. E. 424, the written instrument relied on disclosed no cause of action in plaintiff.''

This case is of little aid to plaintiffs, as it follows the holding of *Railway Passenger & Freight Conductors' Mut. Aid & Benefit Ass'n v. Loomis,* 142 Ill. 560, 32 N. E. 424, which is the leading case in this State and has been repeatedly cited and followed. The court in that case lays down the rule and says, at page 567:

''A contract cannot be said to be in writing, unless the parties thereto, as well as the terms and provisions thereof, can be ascertained from the instrument itself. If a party to a written contract is not named therein, the contract is defective as containing only a part of the agreement. In such case, the agreement is only partly reduced to writing, because parol proof must be resorted to, in order to show with whom the bargain was made.''

And on page 568 the court said:

"But the constitution and by-laws merely designate in a general way certain classes of persons, who will be entitled to the benefit fund upon the death of a member; and parol evidence must be introduced to show that the plaintiff belongs to one of the designated classes."

In the case of *Mowatt v. City of Chicago,* 292 Ill. 578, where the application of the 10-year statute of limitations was involved, the court said at page 582:

"If parol evidence must be introduced to sustain the action the contract is not in writing under this statute. (*Conductors' Benefit Ass'n v. Loomis,* 142 Ill. 560.) The following authorities support same conclusion: 25 Cyc. 1042; 1 Wood on Limitations, (4th ed.) sec. 57f, and cases cited; Bishop on Contracts, secs. 197–203, incl.; 3 Page on Law of Contracts, (2d ed.) sec. 1500, and authorities cited; *Dodd v. Board of Education,* 122 Cal. 106."

We are therefore impelled to hold that as parol testimony must be resorted to, to show the existence of a contractual relationship between the plaintiffs and the defendants, plaintiff Novosk's action was barred by the 5-year statute of limitations, not having been commenced within five years from July 10, 1937.

Plaintiffs offered a witness who was state employment officer of the WPA to prove that the Works Progress Administration determined the hourly rate for bus drivers in Cook county during the years of 1936, 1937 and 1938 to be $1 per hour. An objection was made and sustained. Preliminary to this ruling by the court the witness was asked to describe the method employed by the Works Progress Administration for determining what the hourly rate in Cook county was during 1936 to 1939. This question was propounded to the witness: "Q. In your official

capacity, Mr. Clark, have you made an inquiry in your locality, Cook county, to determine prevailing wage rates with reference to truck drivers and bus drivers?'' An objection to this question was sustained. Plaintiffs then made the following offer of proof:

''I have determined the prevailing wage rate for truck drivers and bus drivers in Cook county; this is determined by the submission of each sponsor of a WPA project of a certified statement to the WPA Administrator stating the wages which it had been its custom to pay to persons employed at given classifications; that sponsor limited the certification to classifications that were to be used on his project; this certification of his customary wages was then submitted to our District Manager governing the area in which the project was to operate; the District Manager reviewed the certification with his Wage Rate Committee composed of various Division Heads in the District Office; this was not a wage establishing committee; it was not our job to establish wages but rather to determine those in existence; it therefore was a fact finding committee that made that review; any other evidence in the way of contacts such as with employers of the community, with organized labor, were made to check against the certification of the sponsor and as a result of all these things a recommendation of approval came from our District Manager. We have had some seven District Managers in some seven Districts of the State come to the State Office for this purpose; these wages were then reviewed by the Wage Rate Committee and after reviewing all of the evidence presented to us and the sponsors certification, the District Manager's recommendation which came with it, from all this evidence we were able to determine what was the prevailing wage rate.

"If we felt that the certifications that came to us and the facts attendant were insufficient to establish prevailing wage rates we would make outside independent investigations."

The case of *G. A. Boeckling Co. v. Schwer,* 122 Ohio St. 40, was a suit by a taxpayer against the taxing officials, wherein it was alleged that the amount of valuations placed upon certain property were grossly excessive, and, second, that the valuations were not made as required by law and therefore were wholly illegal. Under the general code of the State of Ohio provision was made with reference to the determination of the value of property for taxation by the county auditor and the section authorizes said official to employ experts and other clerks to aid him in this work of appraising property for taxation. The pertinent part of this section is as follows:

"Such experts . . . shall perform such services as the county auditor may direct in ascertaining such facts, description, location, character, dimensions of buildings and improvements, and such other circumstances reflecting upon the value of such real estate, as will aid the county auditor in fixing its true value in money."

At page 42 the court said:

"The clerks and subordinates of the appraising company did the actual work of appraising, and made reports of their work, from time to time, to Cleminshaw. None of the appraising was actually done by Cleminshaw himself, except in this way. He assumed the facts stated in these reports of his subordinates to be true, and from these reports alone he prepared a statement of valuations for the auditor, and the auditor adopted the statements so made as true and correct

and entered the valuations so fixed on the tax duplicate accordingly. There is no conflict in the evidence as to how these things were done.

"The subordinates who examined the property and made the reports were not called as witnesses to support the correctness of the valuations so fixed and placed on the tax duplicate. Cleminshaw was called as a witness, and over the objections of the owner was permitted to testify to the correctness of the appraisement. His testimony was wholly hearsay, and was clearly incompetent."

In *McCoy v. Union Elevated R. Co.*, 271 Ill. 490, at page 498, the court said:

"It is urged that the court erroneously excluded evidence offered by plaintiff by which it was sought to show certain elements which after the construction of the elevated railroad entered into the increase in the market value of the premises, viz., increase in population of the city, increase in bank deposits, increase in wholesale trade and manufacturers and increase in street car travel in the city of Chicago. The only attempt to prove these matters was by a witness who stated that his testimony would be based upon data contained in certain reports made by others and as to the correctness of which the witness had no personal knowledge. The court did not err in rejecting his evidence, as it was hearsay."

We are therefore of the opinion that the offer of proof by plaintiffs clearly is based on hearsay testimony and inadmissible. It is clear that the conclusion of the witness was arrived at after considering many submissions, reports, certifications, recommendations and independent investigations, with the exception of his own independent investigation, which of course he could have testified to. The court correctly ruled that said offer of proof was based upon hearsay.

After a careful examination of the law and the evidence and the rulings of the trial court, we have

concluded that the court did not err and did properly direct a verdict at the close of the plaintiffs' case.

For the reasons hereinabove given, the judgment is accordingly affirmed.

*Judgment affirmed.*

BURKE, P. J., and KILEY, J., concur.