## UNITED PROTECTIVE WORKERS OF AMERICA v. FORD MOTOR CO.

### No. 10458.

United States Court of Appeals
Seventh Circuit.
March 14, 1952.

998

William J. Flynn, Chicago, Ill., for appellant.

George B. Christensen, Neal J. McAuliffe and Edward J. Wendrow, all of Chicago, Ill., Fred H. Daugherty, Chicago, Ill. (Winston, Strawn, Black & Towner, Chicago, Ill., of counsel), for appellee.

Before DUFFY, FINNEGAN and SWAIM, Circuit Judges.

SWAIM, Circuit Judge.

This action was brought in the District Court by the United Protective Workers of America, Local No. 2, hereinafter referred to as the "union," and Joseph W. Orloski against the Ford Motor Company, hereinafter referred to as "Ford." The complaint alleged that the action was brought under the Federal Declaratory Judgment Act, 28 U.S.C.A. §§ 2201 and 2202, and suit by the union was authorized by § 301 of the Labor Management Relations Act of 1947, 29 U.S.C.A. § 185(a).

The complaint also alleged diversity of citizenship between Orloski and Ford and the jurisdictional amount. The complaint alleged that the union was a labor organization duly certified by the National Labor Relations Board to represent Ford's plant protection employees of which group Orloski was a member. At the time here in question it is alleged that the plaintiffs and the defendant were operating under a collective bargaining agreement which the union had negotiated with Ford, which agreement became a part of Orloski's contract of employment with Ford.

In 1947 Ford notified Orloski that he was eligible to subscribe for an annuity under a group annuity contract between Ford and an insurance company if he would authorize deductions from his pay checks. Orloski did subscribe for the annuity and received an annuity certificate issued by the Equitable Life Assurance Society showing that after April 1, 1949, he would receive $20 a month. Ford refused to reveal to Orloski or to the union the contents of the master contract between Ford and the insurance company, even though Orloski's annuity certificate is subject to the terms of this contract. Orloski, who had been an employee of Ford for approximately thirty-five years, was notified in February 1949 of the company's intention to dismiss him on April 25, 1949, the date he became sixty-five years of age. Orloski protested such "proposed arbitrary dismissal" to Ford and advised the union of the notice Ford had given him. After receiving such notice, Orloski, through the union, (1) protested his discharge, (2) offered to utilize the grievance procedure of the contract for a determination of his rights thereunder, and (3) offered to negotiate the terms of a bilateral retirement ageement.

The complaint further set out that on the date of his dismissal Orloski was "ready, willing and able and did offer to perform and continue his services, duties and obligations under said contract, but, * * * Ford * * * disregarding its obligations under said collective bargaining agreement," dismissed him and terminated his employment despite his protest and the protest of his bargaining agent, the union; that by reason of Ford's refusal to restore to him "his position, classification, seniority, compensation and other rights and privileges" which belonged to him under the terms of the collective bargaining agreement, Orloski suffered "serious and irreparable injury"; and that the plaintiffs have no adequate remedy at law. The plaintiffs prayed for a declaratory judgment determining and declaring the rights of the parties under the agreement, and that Ford be restrained and prohibited from doing anything in derogation of plaintiffs' rights based on the collective bargaining agreement or on Orloski's annuity certificate. Orloski, individually, also prayed for a mandatory injunction requiring Ford to reinstate him and to pay him full compensation for his lost wages, with interest from the date of his discharge, costs and attorney's fees. A copy of the collective bargaining agreement and a copy of the annuity certificate were attached to and made a part of the complaint.

The defendant, on January 31, 1950, filed its motion to dismiss the complaint, to dismiss as to the union, to strike certain portions of the complaint, to require the plaintiffs to state separately their causes of action, and for a more definite statement of the facts.

The plaintiffs then filed a motion for summary judgment and mandatory injunction, an affidavit alleging that the collective bargaining agreement between the parties had been extended and a paper, in reply to the defendant's motion for a more definite statement of the facts, which they entitled a "Bill of Particulars" in which they stated that Paragraphs (1), (14), (16), (22) and (23) of the collective bargaining agreement were particularly violated by the discharge of Orloski. In the same paper the plaintiffs alleged that, beginning on February 25, 1949, they had, on numerous dates and occasions, by letters, telegrams and telephone communications and in conferences with the various agents, officers and legal representatives of Ford, protested the termination of Orloski's employment charging that it was a violation of the collective bargaining agreement and urging that the

grievance procedure provided for in said agreement be resorted to in an attempt to settle the controversy.

On the same day the District Court took the plaintiffs' motion for summary judgment and mandatory injunction under advisement and ordered that the plaintiffs file supporting briefs within ten days and that all other briefs be filed pursuant to Rule 7 of the District Court. (Rule 7 of the District Court provides: "Failure to file any briefs provided for by this rule shall not be deemed to be a waiver of the motion or matter on the part of the supporting party, or withdrawal of opposition by the opposing party, but the court may, upon its own motion or on the motion of a party, take such action in the premises, including a striking of the motion or a granting of the motion without further briefs or hearing, or the entry of a rule to file supporting or opposing briefs as it may in its discretion determine.")

More than a year later, on March 1, 1951, counsel for the plaintiffs filed a verified motion for entry of a summary judgment and mandatory injunction, for judgment on the pleadings and for entry of judgment by default. In this motion it was alleged that the pleadings, affidavits and admissions in the case showed no material issues of fact, but raised only issues of law; that Ford had disregarded the order of the court and had failed to answer, plead or otherwise respond to the issues raised by the plaintiffs' pleadings; and that Ford had "failed and refused to either object, plead or respond to the order of" the District Court of February 10, 1950. This motion prayed "In the alternative (if the motion for a judgment on the pleadings or for a judgment by default are not allowed), plaintiffs move for an order to strike said defendant's motion 'To Dismiss Complaint, * * *' and for an order requiring defendant * * * to file an answer to plaintiffs' Complaint." The District Court took this motion under advisement, and on April 10, 1951, called in counsel for the parties, announced that it had considered the pleadings and briefs filed, including a brief which had finally been filed by Ford, and asked counsel if they had anything further to add. At that time counsel for Ford said: "I have nothing to add on the merits."

The court then announced its decision and the reasons therefor. The court held that it had jurisdiction of the action under § 301(a) of the Labor Management Relations Act of 1947, 29 U.S.C.A. § 185(a); that Orloski, an individual employee was not a proper plaintiff in an action under § 301(a); that a complaint for declaratory relief might be joined with a complaint for damages under this section; that in this type of action the court did not have jurisdiction to grant injunctive relief; and that the complaint did not state a cause of action upon which relief could be granted. The court, therefore, denied the plaintiffs' motion for a summary judgment and ordered the cause dismissed. The court also denied plaintiffs' motion for a new trial. It is from this judgment dismissing their action and from the denial of their motion for a new trial that plaintiffs are prosecuting this appeal.

■ We agree with the District Court that jurisdiction to entertain a suit for a breach of a labor contract, such as we are here considering, is clearly conferred by § 301(a) of the Labor Management Relations Act of 1947, 29 U.S.C.A. § 185(a), which provides as follows: "(a) Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties."

We also agree that if the case only involved an action under § 301(a), Orloski, under the express terms of this statute could not be considered a proper party plaintiff. This seems clear from the language of the statute.

■ The District Court held, citing American Federation of Labor v. Western Union Telegraph Company, 6 Cir., 179 F.2d 535, that a complaint for declaratory relief

may be joined with a complaint for damages under § 301(a). We see no valid reason why the claim of an individual employee may not also be joined in the same action where, as here, diversity and the jurisdictional amount are alleged. Rule 20 of the Federal Rules of Civil Procedure, 28 U.S.C.A., permits all persons to join in one action as plaintiffs if they assert any right to relief jointly, severally, or in the alternative in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all of them will arise in the action. Here we find both questions of fact and of law common to the plaintiff union and to the plaintiff Orloski. Both the union and Orloski are suing on the same breach of the same contract. The right of a member of a union who has been injured by a breach by his employer of the collective bargaining contract to sue to recover damages is recognized in Illinois. Novosk v. Reznick, 323 Ill.App. 544, 56 N.E.2d 318; Dierschow v. West Suburban Dairies, 276 Ill.App. 355; Annotation, 18 A.L.R.2d 352. See also Marranzano v. Riggs National Bank of Washington, D. C., 87 U.S.App.D.C. 195, 184 F.2d 349. In its brief in this Court Ford does not dispute the fact that the District Court also had jurisdiction of Orloski's action.

■ We agree that the District Court, on the allegations of this complaint, was without power to grant injunctive relief. The District Court held that it was without jurisdiction to grant injunctive relief because of the provisions of the Norris-La Guardia Act, 29 U.S.C.A. §§ 101–115. The authorities are not in agreement on whether the Norris-La Guardia Act deprives the District Courts of the power to grant injunctive relief in a case such as this. The authorities do agree, however, that injunctive relief may never be granted where the plaintiff has an adequate remedy at law. To be entitled to injunctive relief the plaintiff must plead and has the burden of proving facts which show, that he has no adequate remedy at law. While the complaint states that the plaintiffs here "have no other adequate remedy at law," no facts to sustain this conclusion are pleaded. It would seem clear that an action for damages against Ford for a breach of his contract would provide Orloski an adequate remedy. If for some reason not apparent this is not true, the facts showing such reason should have been pleaded.

■ But if, on the allegations of his complaint, Orloski was entitled to damages, his complaint should not have been dismissed. In seeking to justify the dismissal of the complaint Ford insists that the complaint fails to show that the plaintiffs followed the grievance procedures provided for in the collective bargaining agreement and that without such a showing plaintiffs may not resort to the courts for relief. This would ordinarily be true. The grievance procedure set up by this contract provides that a grievance be first presented by the employee to his Shift Foreman or to the Union Committeeman on his shift who, in turn, shall present the grievance to the Shift Foreman. If no satisfactory disposition of the grievance is made by the Shift Foreman, the procedure provides for successive steps until the parties finally reach an Appeal Board made up of two representatives of the union and two representatives of management.

The complaint here stated that Ford "refused plaintiff Union's request that the grievance procedure provided in said collective bargaining agreement * * * be utilized as a means of attempting a settlement of the wrongful dismissal of plaintiff, Joseph W. Orloski, and further refused plaintiff Union's offer to exhaust any or all processes available under said collective bargaining agreement, * * * to attempt a settlement of said wrongful dismissal of plaintiff, Joseph W. Orloski." These allegations of the complaint were supplemented by the plaintiffs' "Bill of Particulars" which they filed in response to the defendant's motion to make the complaint more specific. In this supplemental pleading the plaintiffs alleged "that the plaintiffs did, beginning on the 25th day of February, 1949, and on numerous occasions thereafter up to and including the date of April 26, 1949, verbally, by numerous letters, telegram and telephone communica-

tions and in conferences with various and divers local and Detroit agents, officers and legal representatives of the defendant, Ford Motor Company, protest the termination of the services of the plaintiff Orloski, and did further urge that the grievance procedures, in said agreement provided for, be resorted to, and on numerous occasions during said period did charge that such a termination of Orloski's services would be a breach of the parties' agreement dated August 27, 1947, designated Exhibit A in the plaintiffs' Bill of Complaint."

The grievance was for an alleged breach of the collective bargaining agreement between the parties by the termination of Orloski's employment which Ford now asserts was pursuant to a general plan to retire all employees at the age of sixty-five, a plan which Ford now insists that it had a right to and did, unilaterally adopt. The briefs of the defendant in this court show clearly that the defendant did not consider its action as constituting a breach of the bargaining agreement and that it would have been useless to have gone through the various steps of the grievance procedure. We think the allegations of the complaint, as supplemented by the plaintiffs' "Bill of Particulars," also clearly show this. Parties are not required to do a useless thing. We think that the complaint also sufficiently alleges a refusal by Ford to cooperate in the use of the grievance procedure.

■ We come now to the question of whether the complaint stated a cause of action upon which relief should be granted. The answer to this question is dependent upon whether or not the termination of Orloski's employment by Ford constituted a breach of the collective bargaining agreement. The District Court held that it did not.

The plaintiffs rely principally upon Paragraphs (1), (14), (16), (22) and (23) of the contract but also say that the termination of Orloski's employment was "a breach of the substantive purposes and interest of the parties' contract construed in its entirety."

Paragraph (1) of the contract designates the union as the exclusive bargaining agent for the plant protection employees of Ford. Paragraph (14) provides rules and conditions for determination of seniority. By Paragraph (16) the parties agree that seniority, after it is determined and posted, shall not be changed without notification to and consultation with the union. Paragraph (22) states six different reasons for which seniority shall be broken, including the employee's quitting or being discharged and the discharge not being reversed through grievance procedure. Paragraph (23) provides that the "order of layoff and rehiring shall be governed by first, seniority and second, ability," but that Ford shall consult with the union before deviating from strict seniority. The contract also provides that the right to discharge is the sole responsibility of management but that claims of unjust discharge shall be subject to the grievance procedure.

It is conceded by Ford that at the time Orloski's employment was terminated Orloski desired to continue to work and that, therefore, it could not be said that he voluntarily quit his job. It is equally clear that Orloski was not the object of a "layoff" as that term is ordinarily understood and as that term was used by the parties in their collective bargaining agreement. The labor contract here under consideration does say, in Paragraph (23), that the order of layoff and rehiring is to be governed first by seniority, but, since this was not a layoff, that section is not applicable and that section, considered by itself, was not breached.

Ford is contending in this court that it had the common law right to adopt a policy of compulsory retirement of its employees at the age of sixty-five; that it did adopt such a policy; that, pursuant to that policy, Orloski was retired; and that as a part of that policy it entered into a Group Annuity Contract with Equitable.

As pointed out above, Orloski did join the annuity plan offered by Ford, but the master Group Annuity Contract between Ford and Equitable, under which the certificate to Orloski was issued, does not appear in the record. The complaint alleged that Ford refused the union's request for a copy of the master contract. We have no way of knowing what the terms and conditions

of the master contract were. The certificate issued to Orloski provided that annuity payments of $20 per month would be made to him, commencing on his reaching age sixty-five. The certificate issued to Orloski did not show that the annuity payments to him were conditioned on his retiring at that age, or that there was any connection between the annuity for which he subscribed and the retirement plan under which Ford now says Orloski was retired.

In the District Court, Ford filed no answer or other responsive pleading to the complaint which charged that Ford did "wrongfully and without any claim of right, or alleging any grounds for cause, dismiss from its services and terminate the employment of" Orloski in violation and breach of the collective bargaining agreement, and that this was done at a time when Orloski was "ready, willing and able * * * to perform and continue his services, duties and obligations under said contract."

The District Court decided this case on the pleadings. It denied plaintiffs' motion for a summary judgment and ordered the cause dismissed. The District Court held that the union had the right to bargain collectively with respect to pension and retirement plans and that a provision covering the retirement age "should be included specifically in the contract"; and that, since the contract contained no specific provision concerning retirement age, the complaint failed to state a cause of action entitling the plaintiffs to relief under the Labor Management Relations Act of 1947, or under the Declaratory Judgment Act. The District Court apparently dismissed the action on the theory that Ford retired Orloski pursuant to an established retirement plan or policy. The pleadings, however, reveal no such plan. Apparently Ford chose to rely on its contention that "the contract sued on contains no provisions, either in the seniority provisions, or elsewhere, promising, guaranteeing, or otherwise entitling the plaintiff Orloski to be retained in the employment of the defendant." We think

this statement is too broad. The contract expressly provides that an employee may be discharged only for cause. Compulsory retirement of an employee by his employer accomplishes the same result—the employment is terminated. Certainly the employer may not terminate an employee's employment without cause by the simple expedient of saying that the employee has been retired, and in that manner avoid the consequences of breaching a contract which prohibits discharges except for cause. A consideration of the contract as a whole convinces us that Ford's contention, that an employee's reaching the age of sixty-five is a just cause for discharge within the meaning of the contract, is not tenable.

The complaint standing alone stated a cause of action on which Orloski was entitled to damages for the breach of the contract. It was, therefore, error for the District Court to dismiss the complaint.

The order of the District Court dismissing the complaint is Reversed and the cause is remanded to the District Court with directions to deny the defendant's motion to dismiss the complaint, to afford the defendant an opportunity to answer the complaint and for such further proceedings as are consistent with this opinion.

DUFFY, Circuit Judge (concurring.)

In my judgment this case should not have been decided on a motion to dismiss the complaint, and I am therefore agreeable to the remand which will afford an opportunity to defendant to answer and make proof as to the details and application of the retirement plan under which Orloski allegedly was separated from his employment. The retirement plan relied on by defendant was not disclosed by the pleadings, and was, therefore, not before the trial court on the motion to dismiss. However, I think it should be clearly understood that this court has not expressed any opinion as to whether a correct interpretation of Orloski's employment contract would preclude company action under any form or plan of compulsory retirement.