MISTLETOE EXPRESS SERVICE, an
Oklahoma Corporation, Plaintiff,

v.

MOTOR EXPRESSMEN'S UNION, a
Labor Organization, and Roy
Martin, Defendants.

No. 75–0643–D Civil.

United States District Court,
W. D. Oklahoma.

Oct. 6, 1975.

Opinion on the Merits May 7, 1976.

**2**

Clark Nichols, Charles W. Ellis, Oklahoma City, Okl., for plaintiff.

Jerry D. Sokolosky, Oklahoma City, Okl., for defendant Motor Expressmen's Union.

Jack D. Becker, Oklahoma City, Okl., for defendants.

## ORDER

DAUGHERTY, Chief Judge.

Plaintiff as an employer brought this action against a labor organization (Union) which represents its employees under a Collective Bargaining Agreement and an individual employee (Martin) seeking correction and modification of an award by an Arbitrator pursuant to a grievance procedure initiated by said Union on behalf of Martin. Martin had been discharged by Plaintiff for alleged violations of certain company rules and regulations. The Arbitrator found the discipline imposed on the employee should be reduced to a 60 day suspension and thereafter that the employee Martin should be reinstated. Plaintiff asserts jurisdiction of this Court exists pursuant to 29 U.S.C. § 185(a). Defendant Martin has filed a Motion to Dismiss on the grounds jurisdiction under said Statute is improper as to individuals. Said Motion is supported by a Brief. Plaintiff has filed a responsive Brief in opposition to said Motion.

Defendant Martin cites in support of his Motion the case of *Red Ball Motor Freight, Inc. v. General Drivers Local 961,* 202 F.Supp. 904 (D.Colo.1962) and other cases cited therein. An examination of said case indicates it held that Section 301 of the Labor Management Relations Act, 1947, 29 U.S.C. § 185 does not constitute a jurisdictional basis for a suit against an individual.

Plaintiff urges in its Response that the *Red Ball, supra,* case and others relied on by Movant were effectively overruled by the decision in *Smith v. Evening News Assn.,* 371 U.S. 195, 83 S.Ct. 267, 9 L.Ed.2d 246 (1962) which held that individual claims are within the ambit of Section 301. [It is noted that this latter decision was rendered December 10, 1962 while the *Red Ball, supra,* Order was handed down March 15, 1962.] Plaintiff cites the case of *Sidney Wanzer & Sons, Inc. v. Milk Drivers U., Local 753,* 249 F.Supp. 664, 667 (N.D.Ill. 1966) which holds that individuals can be sued under Section 301. The Court in this latter case considered the holding in *Red Ball, supra,* when it stated:

"The conclusions of both *United Protective Workers* [*United Protective Workers of America v. Ford Motor Co.,* 194 F.2d 997 (7th Cir.)] and *Red Ball* were undermined by the Supreme Court in *Smith v. Evening News Association,* 371 U.S. 195, 83 S.Ct. 267, 9 L.Ed.2d 246 (1962). The Court held that individuals could sue under § 301 to enforce 'individual' rights derived from collective bargaining agreements. However, *Smith* says nothing about suits *against* individuals."

The Court after discussing differences in actions for money damages pursuant to Section 301(b) and the general provisions of Section 301(a) as considered in the case of *Atkinson v. Sinclair Refining Co.,* 370 U.S. 238, 82 S.Ct. 1318, 8 L.Ed.2d 462 (1962) came to the following conclusion:

"The lesson is clear. 'Section 301 has been applied * * * to suits against individual union members for violation of a no-strike clause contained in a collective bargaining agreement. *Atkinson v. Sin-*

clair Refining Co.' Smith v. Evening News Association, 371 U.S. 195, 199–200, 83 S.Ct. 267, 270, 9 L.Ed.2d 246 (1962). Section 301 can be applied similarly here."

In the case of Drivers Union v. Riss & Co., 372 U.S. 517, 83 S.Ct. 789, 9 L.Ed.2d 918 (1963) it was held that jurisdiction was established under Section 301 of an action by a Union and several of its employees to enforce a grievance award which found said employees should be reinstated. Pursuant to said holding, the Movant herein would be able to enforce the Arbitrator's findings complained of herein under Section 301.

The instant action in which modification of the Arbitrator's decision is sought is for equitable relief and a money judgment is not sought against Movant. The holdings of the Sidney Wanzer & Sons, supra, case in which the Court had the benefit of considering the case of Smith v. Evening News, supra, appears to correctly state the law on the point in issue. The Court finds that jurisdiction is present in the instant action against Defendant Martin pursuant to 29 U.S.C. § 185(a) and his Motion to Dismiss is denied. Said Defendant is directed to Answer the Complaint within fifteen (15) days of this date.

## OPINION ON THE MERITS

Plaintiff Mistletoe Express Service (Mistletoe) brings this action against Defendants Motor Expressmen's Union (Union) and Roy Martin (Martin) to set aside an Arbitrator's Award which was entered in a grievance proceeding brought against Mistletoe by Union and Martin. Jurisdiction is pursuant to 29 U.S.C. § 185(a). Martin was at all relevant times an employee of Mistletoe and a member of Union. Union had a collective bargaining agreement (agreement) with Mistletoe. The agreement provided for binding arbitration. Mistletoe fired Martin and Union grieved on his behalf. The grievance proceeded to arbitration. The Arbitrator found that Mistletoe had just cause to discipline Martin but not to terminate him. The Arbitrator set aside the termination and substituted a suspen-

sion. Mistletoe now contends the Arbitrator lacked authority to enter the award he did. Union and Martin contend the Arbitrator's award is final and binding.

There is no controversy as to the facts of this case and it has been submitted by the parties to the Court for decision on a Stipulation. The Stipulation includes the facts stated above, a copy of the agreement, a copy of the Arbitrator's award and the exhibits submitted to the Arbitrator. The facts developed before the Arbitrator show that Martin was employed by Mistletoe as a driver salesman. Martin's duties included making COD deliveries and collecting the charges due on such deliveries. On January 16, 1975 Martin received a COD consignment for delivery to "Bo's Performance". Martin made this delivery on the same day and received a personal or company check in payment. Martin put this check and the accompanying waybill in his shirt pocket and forgot to turn them in that evening. Martin did not discover this mistake until he wore the shirt again approximately a week later. In the meantime the shirt had been washed. The check and waybill were damaged by the washing. Martin then made up a new waybill, returned to "Bo's Performance" where he collected in cash after returning the check and settled up with Mistletoe that evening. These events took place on January 23, 1975.

On January 31, 1975 Martin was given a termination letter which read in part as follows:

"Effective immediately your employment with Mistletoe Express is hereby terminated due to your violation of Union Contract, Section 11, Paragraph 'G' which states 'Failure to settle bills and funds collected for company within twenty-four (24) hours. Company shall have cashier or depository available for this purpose' and Paragraph 'A' which states 'Willful disregard of or failure to comply with company rules furnished to each employee, at the terminal in which they are employed'. Specifically your handling of a COD shipment consigned to: Bo's Performancé, 502 North Virginia, dated Jan-

uary 15th on which you accepted a personal check and on which you did not settle until 1/23/75,"

Section 11 of the agreement reads in pertinent part:

"Employees may be discharged for just cause, among which causes are the following:

(A) Willful disregard of or failure to comply with company rules furnished to each employees, at the terminal in which they are employed.

\*       \*       \*       \*       \*       \*

(G) Failure to settle bills and funds collected for the company within twenty-four (24) hours  .    .  .  .."

One of Mistletoe's company rules required cash or cashier's checks as payment for COD deliveries. There is a dispute in the evidence as to whether this rule or another unwritten policy was enforced. After Martin received the above quoted letter of termination he threatened Mistletoe's cashier who he, Martin, believed to have informed the management of his rule violations. Another one of Mistletoe's rules provided that:

"Threats, intimidation of management personnel in any form, or malicious statements concerning management personnel shall be considered insubordination and are prohibited."

Thus, Mistletoe asserted three bases for Martin's discharge before the Arbitrator: (1) failure to settle up within 24 hours; (2) taking a personal check; and (3) threatening a manager. The Court finds it only necessary to consider the first of these in reaching its conclusion that the Arbitrator exceeded his authority in entering his award.

The Arbitrator defined the issue in the grievance to be whether or not the Company violated the collective bargaining agreement in discharging Martin. Mistletoe contended that the Arbitrator could not question whether the discharge was for just cause as the agreement provided that any one of the acts complained of constituted just cause for termination. The Arbitrator found that Martin was guilty of the acts complained of but concluded that Mistletoe had the burden of establishing that such acts were just cause for discharge. The Arbitrator further found that the rules Martin was asserted to have violated had not been uniformly enforced, that the theory of progressive discipline had not been followed, and, therefore, Mistletoe had failed to establish just cause for Martin's discharge.

Mistletoe now contends that the Arbitrator's award is invalid because it exceeded his contractual authority. Defendants contend the Arbitrator was within the scope of his authority, the arbitration award is binding, and, therefore, the Arbitrator's award is conclusive and binding.

■■■ The Federal policy regarding arbitration under compulsory arbitration clauses of collective bargaining agreements was set out in the *Steelworkers' Trilogy*.[1] In *Enterprise* the Court stated:

"The refusal of courts to review the merits of an arbitration award is the proper approach to arbitration under collective bargaining agreements. The federal policy of settling labor disputes by arbitration would be undermined if the courts had the final say on the merits of the awards.

\*       \*       \*       \*       \*       \*

" .  .  . Nevertheless, an arbitrator is confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice. He may of course look for guidance from many sources, yet his award is legitimate only so long as it draws its essence from the collective bargaining agreement. Where the arbitrator's words manifest an infidelity to this obligation, courts have no choice but to refuse enforcement of the award."

1.  *United Steelworkers v. Enterprise Corp.,* 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960). *United Steelworkers v. American Mfg. Co.,* 363 U.S. 564, 569, 80 S.Ct. 1343, 1363, 4 L.Ed.2d 1403 (1960); *United Steelworkers v. Warrior & G. Nav. Co.,* 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960).

Thus, an Arbitrator's award is not open to a review on the merits in this Court. The merits of an Arbitrator's award include not only his findings of fact, but also his construction and application of the collective bargaining agreement where the agreement provides that disagreements regarding its construction and application shall be submitted to arbitration. *Amalg. Butcher Workmen Local Un. No. 641 v. Capitol Pack. Co.,* 413 F.2d 668 (Tenth Cir. 1969). However, the merits of a case must be examined in order to determine whether an Arbitrator's award draws its essence from the collective bargaining agreement from which the Arbitrator derives his authority. Cf. *International Ladies' Garment W. U. v. Ashland Indus., Inc.,* 488 F.2d 641 (Fifth Cir. 1974).

The instant agreement provides:

"Any complaint, disagreement, or difference of opinion between the company and the union or the employee covered by the agreement, which concerns the interpretation or application of specific terms and provisions of this agreement, shall be considered a grievance. . . ."

Step 4, § 3 of the grievance procedure provides:

". . . The decision of the arbitrator shall be final and binding on the parties."

However, Step 4, § 4 provides:

"The arbitrator shall not be vested with the power to change, modify, or alter any of the terms of this agreement. . . The power and jurisdiction of the arbitrator shall be limited to deciding whether there has been a violation of a provision of this agreement and the appropriate remedy."

■ An Arbitrator's construction of a collective bargaining agreement is final and binding on the parties. Defendants contend that because the agreement uses the word "may" in the phrase:

"Employees may be discharged for just cause . . .", the agreement is ambiguous and susceptible to construction, and, therefore, the Arbitrator's decision is final and binding. Plaintiff argues that the contract is not ambiguous, the Arbitrator has turned his back on the express agreement of the parties, and therefore, the Arbitrator's decision is unenforceable. Defendants agree that if it is shown that the parties had agreed that a violation of § 11(G) of the agreement constitutes just cause for discharge the Arbitrator was not within the scope of his authority in making the instant award and the Court would have the authority to set the award aside.

■ The scope of this Court's review in this case is limited to a determination of whether the Arbitrator has exceeded his contractual authority. An Arbitrator's award is legitimate only so long as it *draws its essence* from the collective bargaining agreement. *Enterprise, supra.* Various tests have been advanced for making the determination whether an Arbitrator's award *draws its essence* from the collective bargaining agreement from which he derives his authority. Among these tests are the following: Judicial inquiry is limited to the question of whether the reluctant party agreed to give the Arbitrator the power to make the award he did. *Gulf States Tel. Co. v. Local 1692, Int. Bro. of Elec. Wkrs.,* 416 F.2d 198 (Fifth Cir. 1969). An Arbitrator's award must be upheld unless it is contrary to the express language of the agreement. *Amerada Hess Corp. v. Local 22026 Fed. Lab. U., A.F.L.–C.I.O.,* 385 F.Supp. 279 (D.N.J.1974); *Amanda Bent Bolt Co. v. International U., U. A., A.I.W.,* 451 F.2d 1277 (Sixth Cir. 1971). An Arbitrator's award must be upheld unless it is clear that the Arbitrator has derived his authority from sources outside the collective bargaining agreement, *Yakima Newspaper Guild, etc. v. Republic Pub. Co.,* 375 F.Supp. 945 (E.D.Wash.1974), or unless the Arbitrator has deviated from the unambiguous provisions of the collective bargaining agreement. *Nuest v. Westinghouse Air Brake Company,* 313 F.Supp. 1228 (S.D.Ill. 1970).

■ Whatever test is applied, the Court has no difficulty in determining that the Arbitrator's award appealed from herein is improper. The parties specifically

agreed that Mistletoe might discharge an employee for failure to settle up within twenty-four (24) hours. The use of the word "may" in this provision does not render the agreement ambiguous or susceptible to construction. It simply means that the employer would have the option whether or not to discharge the employee for the infraction. The Court does not believe that an honest intellect could reach the result that this provision was ambiguous. Cf. *San Francisco-Oakland Newspaper Guild v. Tribune Pub. Co.*, 407 F.2d 1327 (Ninth Cir. 1969). Thus, the Arbitrator has simply disregarded the express agreement of the parties. This he has no authority to do. His authority is contractual and the agreement provides that he has no power to change the provisions thereof. The Arbitrator has read the theory of progressive discipline into the agreement. In doing this he has derived his authority from sources outside the agreement. If a collective bargaining agreement is silent on a point the Arbitrator would have authority to look to the common law of the shop for clarification, *Warrior, supra,* however, this is not to say that such shop custom and usage can alter the express agreement of the parties. This is especially true where, as here, the provision involved is a new provision in the agreement between the parties.[2] Therefore, the Arbitrator exceeded his contractual authority, his award is void and the Court will refuse to enforce the same.

Judgment to such effect should be entered herein. Counsel for Plaintiff will prepare the Judgment and submit the same to the Court for signature and entry herein.

---

**2.** The evidence before the Arbitrator showed that § 11(G) was a new provision in the parties' collective bargaining agreement which came in effect for the first time three months before the involved incident.