**MOTOR EXPRESSMEN'S UNION and Robert Hanko**

v.

**MISTLETOE EXPRESS SERVICE, a corporation.**

No. CA 3-78-0001-C.

United States District Court,
N. D. Texas,
Dallas Division.

Nov. 22, 1978.

Jerry D. Sokolosky, Oklahoma City, Okl., Albert Levy, Irving, Tex., for plaintiffs.

Erich F. Klein, Jr., Lyne, Klein, French & Womble, Dallas, Tex., for defendant.

## MEMORANDUM OPINION

WILLIAM M. TAYLOR, Jr., District Judge.

This case is before the Court as a result of an arbitration award of Arbitrator A. Q. Sartain (hereinafter referred to as "arbitrator") rendered in favor of the Plaintiffs, Robert Hanko (hereinafter referred to as "grievant" or "Hanko") and Motor Expressmen's Union (hereinafter referred to as the "Union"), and against the Defendant, Mistletoe Express Service (hereinafter referred to as "Mistletoe" or "Company"), on September 19, 1977. By Motion for Summary Judgment supported by their Brief, together with various exhibits, affidavits, and pleadings filed in this action, Plaintiffs seek enforcement of the arbitration award. Defendant Mistletoe by Motion supported by its Brief, together with the various exhibits, affidavits, and pleadings filed in this action, seeks a dismissal of this cause for failure to state a cause of action or, alternatively, seeks summary judgment in its favor. This Court finds that a cause of action has been stated; Plaintiffs' Motion for Summary Judgment is granted; and the Arbitrator's award is affirmed.

The grievant was employed by Mistletoe for approximately twelve (12) months immediately preceding his discharge on March 11, 1977. His discharge was the result of a series of alleged "discourtesies" to company customers, B and J Draperies, Cade Pioneer Company, Prestige Press, and GSM, during the period beginning December, 1976, until the date of his discharge. The B and J Draperies incident involved the collection of a C.O.D. and the acceptance of a check for freight. The Cade Pioneer Company incident focused on the correcting of a weigh bill by Cade and its alleged notoriety for short weighing freight. The Prestige Press problem dealt with the placing of freight waiting to be picked up by grievant. GSM also dealt with the placing of freight.

On March 11, 1977, Mr. Hanko was informed that he was terminated, effective immediately, for alleged discourtesy to his customers. The arbitration was the result of grievant's contention with that discharge.

The issue of the arbitration was whether the Company violated the Collective Bargaining Agreement between the Company and the Union in its dismissal of Hanko. The Arbitrator specifically found that the Company did violate the contract and gave an appropriate remedy with such being within the limits of the contract.

The pertinent parts of the Contract are Section 13, Step 4(3) and (4). Section 13, Step 4(3) reads as follows:

"The arbitrator so selected shall then proceed to decide the matter promptly. The decision of the arbitrator shall be final and binding on the parties . . ."

Section 13, Step 4(4) reads:

"The arbitrator shall not be vested with the power to change, modify, or alter any of the terms of this agreement. He shall have no power to establish wage scales or change any wage. Any award of back wages shall be limited to the amount of wages the employee would otherwise have earned from his employment with the company during the period of his separation from the payroll, less any unemployment compensation or other compensation for personal services that he may have received from any source during the period. The power and jurisdiction of the arbitrator shall be limited to deciding whether there has been a violation of a provision of this agreement and the appropriate remedy."

The parties had full opportunity to present evidence at the arbitration hearing and both filed post-hearing briefs.

The Union requested by letter to Company's attorney, Erich F. Klein, Jr., on November 10, 1977, that the Company comply with the Arbitrator's award. Mr. Klein indicated by letter of November 17, 1977, that the Company would refuse to comply with the award unless ordered to do so by a Court of competent jurisdiction. The Union then brought suit to enforce the award with the present action.

The issue in the present case is whether the Arbitrator's award should be enforced.

This Court finds that the Arbitrator acted within the contract's provisions for the rendering of the decision in this arbitration.

The appropriate contract provisions for the power of the Arbitrator are set out *supra*. Arbitrator Sartain acted within these provisions in the rendering of the decision in this case. First, he established the issue: "Whether the discharge of Robert Hanko was in accordance with the contract. If not, what is the remedy?" The Company asserted that Robert Hanko had been discourteous to its customers; and, therefore, they had a right to discharge him. The Company called four witnesses to establish their allegation. The Union disputed this evidence and offered its own conflicting evidence.

■ It was the Arbitrator's duty to weigh all the evidence presented, including post-hearing briefs, in order to reach his decision. Such examination of all the evidence by an arbitrator is perfectly allowable. See *In Re Armstrong Rubber Manufacturing Company v. United Rubber, Cork, Linoleum and Plastic Workers of America, Local 161,* 17 LA 741, 744 (1952). Based on the investigation of all the evidence and arguments, Arbitrator Sartain found that while Hanko was not blameless, the Company was in violation of the contract in discharging him. Although the Arbitrator did not find that Hanko had been discourteous, this finding of the Company's violation is tantamount to a finding that Hanko was not "discourteous" since the Company could dismiss him according to the contract only if he were "discourteous."

■ Since the contract provided no insight into what "discourteous" meant, Arbitrator Sartain turned to the whole transaction to study the evidence and behavior of the parties to make an independent judgment of whether or not the Company had violated the contract. This is entirely proper because behavior does not occur in a vacuum, but is related to a total transaction. Here, the Arbitrator examined all the factors involved. This included the witnesses for both parties, the disputed "letters of recommendation," Hanko's work record,

the Company's handling of the case, the Company's subsequent splitting of Hanko's one route into two after his dismissal, and the Company's lack of use of progressive discipline before the decision was made. Such a use of all the evidence presented was inherently fair, and, since it was found that the Company violated the contract, Mistletoe is bound by that decision.

The Company relies on a recent Tenth Circuit opinion to support the argument that Arbitrator Sartain exceeded his authority in the present dispute. *Mistletoe Express Service v. Motor Expressmen's Union,* 443 F.Supp. 1 (W.D.Okl.1976); affirmed, 566 F.2d 692 (10th Cir., 1977). A close examination of the facts of the cases shows they are clearly distinguishable. In the Tenth Circuit case, the grievant was discharged for a violation of Section 11(g) of the contract. This specifically stated the behavior for which grievant was to be disciplined: "Failure to settle bills and funds collected for the Company within twenty-four (24) hours. Company shall have cashier or depository available for this purpose."

In the present case, the Company alleges that Hanko violated Section 11(a). This states: "Willful disregard of or failure to comply with Company rules furnished to each employee, at the terminal in which they are employed." In and of itself, this section does not specifically state the conduct required for discharge. An extraneous examination then is required of the *Rules and Regulations* of Mistletoe. Rule 24 of the Company's Rules and Regulations is entitled "Discourtesy to Customers," which states, "*Discourtesy* by an employee to customers, or their employees and members of the public during working hours or while transacting company business is prohibited" (emphasis added). There is no clear cut standard in Section 11(A) as set out in Section 11(G), nor do the Company rules specifically define "discourtesy," so the Arbitrator must examine the whole range of evidence to determine what is "discourteous" and what is not, including the actions of the Company. It must be remembered that the Arbitrator is in a much superior

position to evaluate all such factors including business customs and practices and that this Court viewing the situation from afar and without his knowledge should be reluctant to overturn the Arbitrator's decision. The Company equates the Tenth Circuit case and this dispute as the same because each arbitrator found the grievant "guilty" of the infraction alleged. However, in the present case, not only did Arbitrator Sartain fail to find Hanko "guilty" of any infraction, he affirmatively found the Company in violation of the contract.

■ Mistletoe also argues that because the Court did not allow progressive discipline in the Tenth Circuit case, it cannot allow such in the present case. This argument is rejected. The cited case dealt with a violation of an objective rule; here, we deal with a violation of a rule which encompasses much subjectivity. The conduct in the Tenth Circuit case thus constituted a violation of the rule or it did not. When that Court found that the conduct fell within the rule, no alternative was left but to apply the discipline provided for if that rule was breached. The appropriate discipline for such violation included no option for progressive discipline, and, thus, the Arbitrator could not "create" it. Here, however, while the Arbitrator found that the "discourtesy" rule was not violated, he may have believed that such conduct constituted a violation of another rule which allowed progressive discipline. When subjective standards are set, it becomes a degree standard as to which rules have been violated as such conduct may violate two or more rules simultaneously. This is not true of the violation in the Tenth Circuit case which breached only one rule.

Upon finding the Company had violated the contract, Arbitrator Sartain was limited to the bargaining agreement in fashioning a remedy. The remedy for back pay is specifically allowed under Section 13, Step 4(4) of the contract, as set out *supra*.

■ Arbitrator Sartain acted within the perimeters of the contract when he found that the Company had improperly discharged Robert Hanko. He also acted within the boundaries of the agreement when he prescribed an appropriate remedy. The Court, in such a case, cannot examine the merits, but is limited to ascertaining if the Arbitrator acted within the limits of the contract. Therefore, the Court orders enforcement of the award.

Plaintiff's attorney is requested to prepare and submit appropriate order.